IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CT-3055-BO

| | | |
|---|---|---|
| DERWIN MCFADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SERGEANT CHRISTOPHER JAMES | ) | |
| and SERGEANT WILLIAM A. | ) | |
| BRANDON, | ) | |
| | ) | |
| Defendants. | ) | |

The matter now is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 45). The matter also is before the court on defendants' motion to seal (DE 49). The issues raised have been fully briefed, and are ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion to seal and grants defendants' motion for summary judgment.

**STATEMENT OF THE CASE**

Derwin McFadden ("plaintiff"), a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, alleging defendants Sergeant Christopher James ("James") and Sergeant William A. Brandon ("Brandon") failed to protect him from a known risk of harm at Pender Correctional Institution ("Pender") in violation of the Eighth Amendment to the United States

Constitution. Specifically, plaintiff asserts defendants knew he was high on K2[1] and did not place him in restrictive housing for administrative purposes pending a mental health screening in order to protect him from self-injurious behavior. On December 3, 2020, North Carolina Prisoner Legal Services ("NCPLS") was appointed to conduct discovery on plaintiff's behalf pursuant to the court's Standing Order 20-SO-1. See (DE 17). NCPLS then assisted plaintiff with discovery and provided him legal advice. See (DE 44).

On October 29, 2021, defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Defendants attached an appendix which included the following: a declaration from defendants' counsel J. Locke Millholland, IV; affidavits from defendants; a declaration from Pender's Associate Warden Robert Norvell; an affidavit from Dominic D'Souza–a correctional officer at Pender; the North Carolina Department of Pubic Safety ("DPS") Offender Public Information page for plaintiff; and excerpts from plaintiff's medical and mental health records. Defendants also filed a motion to seal their memorandum in support of their motion for summary judgment, statement of material facts, and exhibits. Plaintiff responded to defendants' motion for summary judgment.

## STATEMENT OF FACTS

At Pender on June 1, 2019, correctional staff suspected plaintiff was intoxicated and placed him in a holding cell at 10:00 a.m. for approximately four hours. ((DE 48-6) ¶¶ 7-8; (DE 52-1), p. 12). While plaintiff was in the holding cell, correctional staff repeatedly asked him if he had "taken anything," and plaintiff responded that he had not. ((DE 48-6) ¶ 9; (DE 48-7) ¶ 8). Plaintiff,

---

[1] "K2" is a synthetic version of THC, the psychoactive ingredient in marijuana. See United States v. Underwood, No. 7:05-CR-00025, 2022 WL 1110345, at *7, n. 5 (W.D. Va. Apr. 13, 2022).

2

however, asserts in his complaint that he ultimately confessed to using K2. (Compl. p. 5; (DE 52-1), p. 17). At approximately 10:53 a.m., Pender correctional staff searched plaintiff's cell and found a "part of a smoked marijuana cigarette." ((DE 52-1), p. 17).[2] At 2:05 p.m. plaintiff began responding clearly to questions from correctional staff, and staff released him form the holding cell. ((DE 48-6) ¶ 10; (DE 48-7) ¶ 9). During his conversation with the officers, plaintiff explained that he was "just tired," and was not able to rest in the dorm setting. (DE 48-7) ¶ 10). Plaintiff further explained that he was able to rest while in the holding cell, and felt much better. (Id.) Correctional staff released plaintiff from the holding cell at 2:05 p.m.[3] ((DE 52-1) p. 13).

Plaintiff later entered the dorm and appeared to be looking for his headphones which were missing. ((DE 48-9) ¶ 4). Plaintiff told Dominic D'Souza, the officer in charge, that he knew who had his headphones, and D'Souza observed that plaintiff looked impatient. (Id.) Plaintiff requested that the sergeant and captain be called, but D'Souza declined to do so. (Id.) Plaintiff left the dorm and returned approximately five minutes later. (Id. ¶ 5). Without warning, plaintiff walked up and struck a glass window. (Id.) D'Souza immediately called a "code blue" at approximately 3:35 p.m., and officers, including defendants Brandon and James, responded. (Id. ¶ 6; (DE 48-7) ¶ 11; (DE 48-6) ¶¶ 10-11). Defendant James asked plaintiff what happened to him, and plaintiff responded that he had hit a window out of anger and that his hands went through the window. ((DE 48-7) ¶ 12). Defendants Brandon and James then administered aid to plaintiff until the arrival of Emergency Medical Services ("EMS"). (Id. ¶¶ 12-15; (DE 48-6) ¶¶ 11-12).

---

[2] Plaintiff was charged with an A12 disciplinary offense arising out of the search of his cell, which ultimately was dismissed. ((DE 52-1), pp. 17, 18).

[3] Defendant James attested that inmates often soak smoking papers in coffee in order to mask the controlled substance's odor. ((DE 48-7) ¶ 8). James further attested that plaintiff did not smell like any controlled substance or coffee. (Id.)

3

EMS next transported plaintiff to the local emergency room, and defendant James accompanied plaintiff in the ambulance. ((DE 48-7) ¶ 15). Upon arriving at the emergency room, plaintiff was bleeding to the extent that the emergency room doctor had to assist defendant James to stop the bleeding. (Id. ¶ 16). Plaintiff asked defendant James not to let him die, and defendant James assured plaintiff that he would not. (Id. ¶ 17). At the hospital, plaintiff denied substance abuse, depression, suicidal ideations, and stated that he did not intentionally attempt to hurt himself. (DE 48-4). When plaintiff returned to Pender, he was evaluated and "placed on self-injury precautions." ((DE 48-5), p. 1; (DE 52-1), p. 26)). The psychologist who conducted the evaluation provided as follows:

> Many of the risk and protective factors could not be assessed due to Mr. McFadden's refusal to participate in the interview. According to his past records, he has at least some static factors that could increase his risk for self-harm. For example, he has a history of mental illness (most recent dx: Persistent Depressive Disorder, Moderate and Unspecified Trauma-and Stressor-related Disorder), he lacks family connections, and he has a history of self-harm (previously cut abdomen and recently cut arms).
>
> Mr. McFadden also exhibited some dynamic factors that could increase his risk of self-harm. For example, he presented as agitated and anxious, he complained of being in pain, and he recently engaged in impulsive behaviors. Additionally, this writer is familiar with his case and he is known to have on-going family stressors. It should be noted that there are likely more dynamic factors to consider but these could not be assessed due to his refusal to participate.
>
> At the time of this encounter, there were no known protective factors. As noted above, Mr. McFadden was unwilling to participate in the assessment process; therefore, little is known about why he punched the window which subsequently resulted in a two-day stay in the hospital for severe lacerations to his arms. He only made vague statements such as, "I'm going through some stuff right now." His affect is varied between hostile and tearful. There is some evidence in his records that he has cut himself before. Given this information,

4

> the prudent course of action is to place Mr. McFadden on Self-Injury
> Precautions.

((DE 52-1), p. 26).

On June 5, 2019, Pender staff removed plaintiff from restrictive housing. ((DE 48-5), p. 1). Plaintiff was evaluated by a psychologist on June 6, 2019, and reported "he 'definitely' was not trying to harm himself when he punched a window, and was quite surprised when it broke." (Id.) The psychologist who saw plaintiff indicated no elevated risk for self-injury. (Id.) Notably, plaintiff had undergone a routine mental health screening on May 17, 2019, and the provider found that plaintiff had no elevated risk factors for self-injurious behavior. ((DE 48-3), p. 1). The provider, however, also remarked, on May 17, 2019, that plaintiff has a "documented history of violent behavior both in the community and while incarcerated." (Id.)

Plaintiff later was charged with a B14 disciplinary offense for the willful damage or destruction of property. See ((DE 52-1), p. 19). The summary of the incident provided as follows:

> A verified reporting party statement was obtained from Correctional Officer D D'Souza stating that on June 1, 2019 at approx 1553 hrs, I correctional Officer D'Souza OIC of Charlie Dorm saw that offender Derwin McFadden's behavior was odd and abnormal. Offender Derwin McFadden was upset a pair of earbuds that he claimed was missing from his property. I then told offender Derwin McFadden to step ASID away from the OIC control desk, to speak with him. Offender McFadden stated that he needed to speak with Sergeant or mental health, because he was not feeling like himself. Offender McFadden walked away from the bars toward the hallway, he struck the right side hallway window with both arms exposing his forearms were cut. I then called a code blue while controlling the area by clearing all offenders from offender Derwin McFadden, into their wings clearing the hallway area entrance in Charlie Dorm. Medical staff arrived, Offender McFadden treated by medical.

5

(Id.) The B14 disciplinary charge ultimately was dismissed. (Id.) Plaintiff later thanked defendants Brandon and James for saving his life. ((DE 48-7) ¶ 19; (DE 48-6) ¶ 13).

Prior to June 1, 2019, defendant Brandon had no contact with plaintiff, other than passing, and defendant James had no contact with plaintiff. ((DE 48-6) ¶ 15;(DE 48-7) ¶ 20). Additionally, Pender's Associate Warden Norvell attested that it is not policy at Pender to immediately administer a drug screen if an offender is suspected of being intoxicated. ((DE 48-8) ¶ 5). Norvell, additionally, attested that Pender does not have the ability to test for synthetic cannabinoids, and other substances would not immediately show up in available drug screens. (Id.)

## DISCUSSION

A.  Motion to Seal

Defendants move this court to issue an order sealing their memorandum in support of their motion for summary judgment, statement of material facts, and their appendix. Local Rule 26.1(a)(1) of this court's Local Rules of Practice and Procedure require that medical records not be open to inspection or copying by any person except the parties and their attorneys. It further requires the filing of any such records to be accompanied by a motion to seal. Portions of plaintiff's medical and mental health records are contained in defendants' appendix. See (DE 48). Based upon the foregoing, defendants' motion to seal is GRANTED as to plaintiff's appendix, and the Clerk of Court is DIRECTED to maintain defendants's appendix (DE 48) under seal. See, e.g., Roberson v. Paul Smith, Inc., No. 5:07-CV-284-F, 5:08-CV-40-F, 2010 WL 2332282, at * 1 (E.D.N.C. June 9, 2010). The remainder of defendants' motion to seal (DE 48) is DENIED. See, Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 578 (4th Cir. 2004) (citing Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)).

6

B.  Motion for Summary Judgment

   1.  Standard of Review

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

   2.  Analysis

Defendants raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

7

The court first determines whether plaintiff has established an Eighth Amendment violation. "[P]rison officials have a duty to protect prisoners from self-destruction or self-injury." Gordon v. Kidd, 971 F.2d 1087, 1094 (4th Cir. 1992). To state a claim for failure to protect, an inmate must allege: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health and safety. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Deliberate indifference requires that a prison official "know of and disregard an objectively serious ... risk of harm." De'Lonta, 330 F.3d at 634. "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The court focuses its inquiry on the subjective prong of the Eighth Amendment test. As the Fourth Circuit set forth in Danser v. Stansberry, 772 F.3d 340 (4th Cir. 2014),

> A plaintiff establishes "deliberate indifference" by showing that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." [*Farmer,* 511 U.S.] at 837, 114 S. Ct. 1970. Importantly, deliberate indifference is "a very high standard," *Grayson v. Peed,* 195 F.3d 692, 695 (4th Cir.1999), which requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Notably, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also id.* at 840–42, 114 S.Ct. 1970 (evidence concerning "constructive notice" of a substantial risk is generally not sufficient proof to establish a deliberate indifference claim); *Rich v. Bruce,* 129 F.3d 336, 338–40 (4th Cir.1997). A "showing of mere negligence" will not suffice. *Grayson,* 195 F.3d at 695. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not" will not give rise to a claim under the Eighth Amendment. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970; *Iko,* 535 F.3d at 241 (stating that "[i]t is not enough that the [defendant] should

8

> have recognized" a substantial risk of harm for purposes of a deliberate indifference claim) (citation and internal quotation marks omitted).

Danser, 772 F.3d at 347.

The record reflects defendants did not personally know plaintiff prior to the June 1, 2019 incident, and did not know him to have self-injurious behavior. See ((DE 48-6) ¶ 15; (DE 48-7) ¶ 20). There also was no indication plaintiff was at risk for self-injurious behavior on June 1, 2019. In fact, a mental health provider documented that plaintiff had no elevated risk factors for self-injurious behavior approximately two weeks before the incident at issue. See ((DE 48-3), p. 1). There, additionally, is no indication plaintiff expressed any concern for his well-being or behaved in a way that would alert defendants to a risk of self harm on June 1, 2019.[4] Even if the officer defendants knew plaintiff was intoxicated on June 1, 2019, there simply is no evidence defendants had knowledge that plaintiff was a risk for self-harming behavior. Thus, defendants did not violate the Eighth Amendment. See Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990) ("The officers had no absolute duty to protect Belcher from harming himself merely because he was intoxicated, where they had no reason to believe that his intoxicated state would lead to harm which was self-inflicted.").

It also is unclear as to whether plaintiff actually intended to cause himself harm when he struck the window. The record reflects plaintiff expressed surprise that the window broke when he struck it, and informed medical providers and prison staff that he was not trying to harm himself

---

[4] The record reflects plaintiff stated that he told Officer D'Souza that he was not feeling like himself and needed to speak with mental health. See ((DE 52-1), p. 19). However, plaintiff made these statements to Officer D'Souza immediately before plaintiff hit the glass, leaving D'Souza no time to react. Further, Officer D'Souza is not a defendant in this action.

9

when he hit the window. See ((DE 48-5), p. 1; (DE 48-7) ¶ 12; (DE 48-4). While plaintiff states he was intoxicated on June 1, 2019, he does not state that he had thoughts of harming himself prior to the incident. Based upon the foregoing, plaintiff cannot establish an Eighth Amendment violation. See, Belcher, 898 F.2d at 36; Thompson v. Clarke, No. 7:17-cv-00010, 2020 WL 1124361, at *6-7 (W.D. Va. Mar. 6, 2020), aff'd in part, dismissed in part, 853 F. App'x 902 (4th Cir. 2021); Taylor v. Friedman, No. 5:14-CT-3065-H, 2015 WL 1284236, at *6 (E.D.N.C. Mar. 18, 2015); Chennault v. Mitchell, 923 F. Supp. 2d 765, 781 (E.D. Va. Feb. 7, 2013) ("[T]he courts have rejected efforts to hold jailers responsible for suicides by inmates . . . who engaged in violent, non-compliant behavior within the jail when there has been no clear indication of a potential for suicide."); see also, Cope v. Cogdill, 3 F.4th 198, 208 (5th Cir. 2021), cert. denied, No. 21-783, 2022 WL 234618 (2022).

To the extent plaintiff asserts defendants violated DPS policies and procedures which required drug screening or placement in restrictive housing for administrative purposes pending a mental health screening for intoxicated inmates, alleged violations of prison policies are insufficient to establish an Eighth Amendment violation. See Belcher, 898 F.2d at 36 (Defendants "failure to follow procedures established for the general protection and welfare of inmates does not constitute deliberate disregard for the medical needs of a particular intoxicated individual."); Short v. Stokes, No. 1:18CV741, 2021 WL 620933, at *9 (M.D.NC. Feb. 17, 2021) ("Sergeant Morgan's alleged conduct may have violated Detention Center policy, but it is not unconstitutional."). Thus, plaintiff again failed to establish a constitutional violation, and defendants are entitled to qualified immunity. See Chennault, 923 F. Supp. 2d at 781 (citing Davis v. Scherer, 468 U.S. 183, 194 (1984) ("Officials

10

sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.")).

To the extent plaintiff asserts defendants failed to recognize him as a "level (2) mental health [] under the [] American Disability Act ["ADA"]," he has not alleged any facts to support a claim pursuant to the ADA. Thus, the claim is DISMISSED. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); White v. White, 886 F.2d 721, 723 (4th Cir. 1989); see also, Goodman v. Johnson, 524 F. App'x 887, 890 (4th Cir. 2013).

## CONCLUSION

In summary, defendants' motion to seal (DE 49) is GRANTED as to defendants' appendix, and the Clerk of Court is DIRECTED to maintain defendants' appendix (DE 48) under seal. The remainder of defendants' motion to seal (DE 49) is DENIED. Defendants' motion for summary judgment (DE 45) also is GRANTED. The court declines to exercise supplemental jurisdiction over any state law claims and dismisses such claims without prejudice. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 13 day of July, 2022.

TERRENCE W. BOYLE
United States District Judge